UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Karen Julius

    v.                                            Civil No. 16-cv-516-JL
                                                  Opinion No. 2017 DNH 084
Wells Fargo Bank, N.A.


**MEMORANDUM ORDER**

The plaintiff in this mortgage-related action challenges the defendant's foreclosure on the mortgage on her home in Derry, New Hampshire. Plaintiff Karen Julius brought a complaint against Wells Fargo Bank, N.A., the lender and mortgagee, in Rockingham County Superior Court, after Wells Fargo initiated foreclosure proceedings a mere two days after the death of her husband, the only obligor under the mortgage note. Wells Fargo removed the action to this court, see 28 U.S.C. § 1441, which has subject-matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).

By her First Amended Complaint, Julius raises several state-law claims, asserts violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., and challenges the defendant's standing to foreclose.[1] Wells Fargo

---

[1] Julius amended her complaint as a matter of course, see Fed. R. Civ. P. 15(a)(1), withdrawing her claims for negligence,

moves to dismiss the First Amended Complaint, arguing that it fails to state a claim upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6), and citing -- in that process -- a plethora of cases in which nearly identical claims brought by plaintiff's counsel have been repeatedly dismissed by courts in this District.[2]  See, e.g., Mader v. Wells Fargo Bank, N.A., 2017 DNH 011 (McCafferty, J.); Gasparik v. Fed. Nat'l Mortg. Ass'n, 2016 DNH 215 (Johnstone, M.J.); Riggieri v. Caliber Home Loans, Inc., 2016 DNH 128 (McCafferty, J.); Bowser v. MTGLQ Inv'rs, LP, 2015 DNH 149 (McCafferty, J.); LaCourse v. Ocwen Loan Servicing, LLC, 2015 DNH 077 (McCafferty, J.).  After hearing oral argument and concluding that Julius's claims are foreclosed on much the same grounds, the court grants Wells Fargo's motion.

I.  **Applicable legal standard**

The plaintiff must state a claim to relief by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir.

---

negligent infliction of emotional distress, and violations of N.H. Rev. Stat. Ann. § 358-A, and adding her RESPA claim.

[2] To the extent that claims in these cases were dismissed because they were barred as a matter of law, plaintiff's counsel has not sought review of that law, or the court's application of it, on appeal.

2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor. See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010). The court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009) (internal quotations omitted). The court "need not, however, credit bald assertions, subjective characterizations, optimistic predictions, or problematic suppositions," and "[e]mpirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference." Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998) (internal quotations omitted).

## II. Background

The following factual summary adopts the approach described above. Karen Julius and her late husband, Tabert Julius, purchased their home in Derry in 2005.[3] Both Mr. and Mrs. Julius

---

[3] First Amended Compl. (doc. no. 12) ¶ 6. While the plaintiff alleges that they purchased the home in 2005, the mortgage note

3

signed the mortgage agreement,[4] but only Mr. Julius signed the note.[5] The Juliuses remained current on their mortgage payments for approximately ten years, until Mr. Julius, who suffered from cancer, became unable to work in late 2015.

Around that time, the Juliuses sought relief from Wells Fargo, which provided them with some forbearance by admitting them into its home preservation program. Wells Fargo did not, at that time, inform the Juliuses that they would be removed from the program should Mr. Julius pass away. The Juliuses continued to make reduced payments, even after the plaintiff left her job to care for her husband full-time. She informed Wells Fargo of these hardships in March 2016 through a letter to their home preservation program specialist.

Mr. Julius passed away in 2016. Two days later, Wells Fargo informed the plaintiff that she would be removed from the home preservation program, and that her home would be placed in

---

bears the date of August 23, 2006. Mot. to Dismiss Ex. A (doc. no. 13-2) at 1.

[4] Mot. to Dismiss Ex. B (doc. no. 13-3) at 17.

[5] Mot. to Dismiss Ex. A (doc. no. 13-2) at 3. The court may consider these documents without converting defendant's motion to dismiss under Rule 12(b)(6) into one for summary judgment because the mortgage agreement and note are integral to Julius's complaint seeking relief from foreclosure. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

foreclosure proceedings.  Though she requested additional time to find employment and set her affairs in order, she was removed from the home preservation program.  Wells Fargo also "removed her from receiving statements and loan details online," preventing her from keeping track of her loan or payments.[6]  At oral argument, the parties confirmed that the defendant never initiated foreclosure proceedings or issued a foreclosure notice.

**III. Analysis**

The plaintiff has brought five claims against Wells Fargo arising from this series of events:  (1) breach of the covenant of good faith and fair dealing; (2) negligent misrepresentation, (3) intentional infliction of emotional distress; (4) violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq.; and (5) a challenge to the defendant's standing to foreclose on the mortgage.

The court is not unsympathetic to the plaintiff's position. It may have behooved Wells Fargo to offer her an opportunity to set her affairs in order after her recent loss and to make arrangements allowing her to pay off the mortgage loan, even though she was not originally a party to the note.  While that

---

[6] First Amended Compl. (doc. no. 12) ¶ 24.

may have been a considerate practice on Wells Fargo's part, it is not a course Wells Fargo was legally obligated to take.

As the court discusses with respect to each of the plaintiff's claims, courts in this District have repeatedly dismissed the same claims brought by the plaintiff's counsel, explaining in detail the reasons why those claims do not lie. Because this ground has been so thoroughly trodden, and is by now so undoubtedly familiar to plaintiff's counsel, the court does not retread it in detail here. For the reasons discussed below, all of the plaintiff's claims must be dismissed.

### A. The covenant of good faith and fair dealing (Count 1)

The plaintiff first contends that Wells Fargo violated the implied covenant of good faith and fair dealing. "In every agreement, there is an implied covenant that the parties will act in good faith and fairly with each other." Birch Broad, Inc. v. Capitol Broad. Corp., Inc., 161 N.H. 192 (2010). Julius invokes the third category of the breach of that covenant recognized in New Hampshire: limitation of discretion in contractual performance. See id. at 198. Whether a plaintiff has sufficiently alleged a breach of that particular duty

> turns on three key questions: (1) whether the agreement allows or confers discretion on the defendant to deprive the plaintiff of a substantial portion of the benefit of the agreement; (2) whether the defendant exercised its discretion reasonably; and

> (3) whether the defendant's abuse of discretion caused
> the damage complained of.

Moore v. Mortg. Elec. Reg. Sys., Inc., 848 F. Supp. 2d 107, 129 (D.N.H. 2012). As with many such claims brought before this court, the plaintiff's fails at the first inquiry.

"[T]he duty of good faith and fair dealing ordinarily does not come into play in disputes" where "the underlying contract plainly spells out both the rights and duties of the parties and the consequences that will follow from a breach of a specified right." Milford-Bennington R. Co., Inc. v. Pan Am Rys., Inc., 2011 DNH 206, 11 (Barbadoro, J.) (internal quotations and citations omitted). "[P]arties generally are bound by the terms of an agreement freely and openly entered into,' and the implied covenant does not preclude a contracting party from insisting on enforcement of the contract by its terms, even when enforcement 'might operate harshly or inequitably.'" Moore, 848 F. Supp. 2d at 129 (quoting Olbres v. Hampton Co-op. Bank, 142 N.H. 227, 233 (1997)). That is the case here.

The plaintiff does not dispute that the note obligated her husband to pay back the amount of the loan secured by the mortgage.[7] Nor does she dispute that the account was in default.

---

[7] Because only Mr. Julius signed the note, only he was obligated to repay the amount of the loan secured by the mortgage.

7

The mortgage contract -- which both Mr. and Mrs. Julius signed -- spells out the lender's remedy in the event that Mr. Julius defaulted.[8] The plaintiff argues, in essence, that by allowing the Juliuses to enter the home protection program and by communicating with the plaintiff while her husband was ill, Wells Fargo created an expectation that it would continue to forebear and to communicate with her, despite the fact that she was a third-party to the note, after his passing.[9] The clear terms of the agreement preclude such a claim.

The mortgage agreement, to which the plaintiff *was* a party, provides that forbearance by Wells Fargo "shall not be a waiver of or preclude the exercise of any right or remedy," including acceleration or statutory power of sale.[10] While the defendant may, under these provisions, possess some discretion in deciding whether or not to proceed with the foreclosure, the provisions in question are "not so lacking in clarity as to provide the fodder for a successful claim for breach of the implied duty of good faith and fair dealing." Dove v. Bank of New York Mellon, 2016 DNH 041, 13-14 (where note and mortgage provide lender with

---

[8] Mot. to Dismiss Ex. B (doc. no. 13-3) ¶ 22.

[9] See First Amended Compl. (doc. no. 12) ¶¶ 39-44; Obj. to Mot. to Dismiss (doc. no. 14) at 2-3.

[10] Id. ¶ 12.

8

discretion to accelerate loan and pursue remedies including statutory power of sale upon default, borrower could not maintain a breach of implied covenant claim). The unfortunate circumstances that led to this action do not dictate a different result.[11] Accordingly, the court dismisses Count 1.[12]

### B. Negligent misrepresentation (Count 2)

Julius next brings a claim for negligent misrepresentation on the defendant's part. This claim, too, must be dismissed.

The elements of a negligent misrepresentation claim are "a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff." Wyle v. Lees, 162 N.H. 406, 413 (2011). At the outset, the court is skeptical that the plaintiff has alleged either of these elements. The plaintiff has not alleged any specific misrepresentations by the defendant, asserting only generally that Wells Fargo "has made inconsistent and inaccurate representations regarding the mortgage at issue, misleading the Plaintiff on several

---

[11] Even were there a breach, the plaintiff conceded at oral argument that she would be unable to demonstrate that she was damaged thereby.

[12] Other courts in this District have dismissed similar claims brought by plaintiff's counsel on at least five occasions. See Mader, 2017 DNH 11, 9-12; Gasparik, 2016 DNH 215, 11-13; Riggieri, 2016 DNH 128, 24; Bowser, 2015 DNH 149, 13-15; LaCourse, 2015 DNH 77, 14-18.

9

occasions."[13]  As to reliance, at oral argument, plaintiff's counsel conceded that the complaint does not indicate how or whether the plaintiff relied or would have relied on any of the potential misrepresentations alleged in the complaint.

Even if the plaintiff has pleaded misrepresentations on the part of the defendant, she is barred from recovering in tort under the economic loss doctrine.  The economic loss doctrine "precludes a harmed contracting party from recovering in tort unless [she] is owed an independent duty of care outside the terms of the contract."  Wyle, 162 N.H. at 410.  As Judge McCafferty has explained on several occasions, "the economic loss doctrine bars negligent misrepresentation claims in a traditional borrower-lender contractual relationship."  Mader, 2017 DNH 11, 8 (citing Schaefer v. Indymac Mortg. Servs., 731 F.3d 98, 108 (1st Cir. 2013)); see also Riggieri, 2016 DNH 128, 10-13; Bowser, 2015 DNH 149, 5-6.  New Hampshire recognizes two exceptions to this bar in the negligent misrepresentation context.  Neither applies to the plaintiff's claim, as the plaintiff conceded at oral argument.

The first exception arises when the alleged negligent misrepresentation induced a contracting party to enter into the

---

[13] First Amended Compl. (doc. no 12) 56.

contract.  Wyle, 162 N.H. at 411-12.  Here, the plaintiff has
not alleged that any false representations from Wells Fargo
induced her, or her husband, to enter into the mortgage
agreement.  Nor does she allege that she entered into some
subsequent agreement with Wells Fargo based on some later
misrepresentation.  At best, she alleges that Wells Fargo's
failures to inform her that the Juliuses' participation in the
home preservation program may end, and Wells Fargo may exercise
its contractual rights, after the signatory to the note passed
away, "were material to the transaction."[14]  Even if this failure
to speak amounts to a misrepresentation, the plaintiff does not
allege reliance on Wells Fargo's allegedly culpable silence.
That is, she does not allege that she would not have
participated in the home preservation program if Wells Fargo had
provided this information.  Indeed, the plaintiff does not argue
that, under the circumstances, she or her husband would have
rejected any offer of forbearance on the defendant's part that
allowed them to stay in their home.  Absent any reliance, her
claim does not fall under this exception.  See Plourde Sand &
Gravel, 154 N.H. at 801.

---

[14] First Amended Compl. (doc. no. 12) ¶ 59-60.  She does not, however, indicate just which transaction they were material to.

11

The second exception applies in limited circumstances where "a negligent misrepresentation [is] made by a defendant who is in the business of supplying information." Wyle, 162 N.H. at 410. The First Circuit Court of Appeals "read[s] Wyle as holding that [this] exception reaches only those representations . . . that relate to a transaction other than the one that constitutes the subject of the contract; representations made during the course of the contract's performance and related to the subject matter of the contract, by contrast, are so bound up in 'the performance of the contract' as to be barred by the economic loss doctrine." Schaefer, 731 F.3d at 109 (citing Wyle, 162 N.H. at 410-13)). To the extent that the plaintiff contends that the defendant is "in the business of supplying information,"[15] such that this exception replies, the Court of Appeals' interpretation of Wyle forecloses recovery based on the alleged misrepresentations that she recites, all of which were made during performance of, and related to the subject-matter of, the mortgage agreement. See Mader, 2017 DNH 11, 8; Gasparik, 2016 DNH 215, 10-11.

At oral argument, the plaintiff suggested that the economic loss doctrine does not bar her claim under a third exception

---

[15] See First Amended Compl. (doc. no. 12) ¶¶ 54-55.

12

because the defendant owed her "an independent duty of care outside the terms of the contract." Wyle, 162 N.H. at 410. To the extent that New Hampshire law recognizes such an exception, it would not apply here, where all of the communications as between the parties recited in the complaint concerned the subject-matter of the contract and the parties' conduct in accordance with its terms.

Because it is barred by the economic loss doctrine, and not subject to any exception, the court dismisses Count 2 of the plaintiff's complaint.

### C.  Standing (Count 3)

Julius's third count addresses, but does not challenge, Wells Fargo's standing to foreclose on the property. She contends that "[i]f no properly executed promissory note can be produced by the Defendant," or "[i]f no strict compliance with RSA 479:25 can be shown, . . . the Plaintiff would challenge the Defendant's legal standing to foreclose."[16]  She purportedly does so in order to preserve her right to challenge the note's validity or Wells Fargo's compliance with N.H. Rev. Stat. Ann. § 479:25, which provides that failure to institute a petition to enjoin the a scheduled foreclosure sale "shall thereafter bar

---

[16] First Amended Compl. (doc. no. 12) ¶¶ 65-66.

13

any action or right of action of the mortgagor based on the validity of the foreclosure."  Id.

The plaintiff does not allege *that* the defendant cannot produce a valid note or *that* the defendant failed to comply with New Hampshire law.  No facts recited in the complaint support the supposition that the note may not be valid or that the defendant failed to so comply.  The defendant has produced a copy of the note,[17] the validity of which the plaintiff does not challenge in her objection to the instant motion.  Indeed -- the plaintiff does not object at all to the dismissal of this count, and withdrew it at oral argument.

Plaintiff's counsel is on notice that such hypothetical claims do not pass Rule 12(b)(6) muster.  See Mader, 2017 DNH 11, 15; Riggieri, 2016 DNH 128, 27; Gasparik, 2016 DNH 215, 18-19; LaCourse, 2015 DNH 77, 7 n.6.  He was aware of this before filing the plaintiff's First Amended Complaint.  See Riggieri, 2016 DNH 128, 27; Gasparik, 2016 DNH 215, 18-19; LaCourse, 2015 DNH 77, 7 n.6 (citing the court's sua sponte dismissal of an identical "claim" when granting plaintiffs' motion to amend the complaint).  The court therefore dismisses this claim, and presumes that Attorney Mathews will perform the "inquiry

---

[17] See Mot. to Dismiss Ex. A (doc. no. 13-2).

reasonable under the circumstances" contemplated by Federal Rule of Civil Procedure 11(b) before bringing such a claim in the future -- including but not limited to determining whether there exists a good-faith basis to challenge the note's validity and the defendant's compliance with N.H. Rev. Stat. Ann. § 479:25.

   D.   **Intentional infliction of emotional distress (Count 4)**

The plaintiff next brings a claim for intentional infliction of emotional distress.[18]  "In order to make out a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant 'by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another.'"  Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (quoting Morancy v. Morancy, 134 N.H. 493, 496 (1991)).  Liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

---

[18] The plaintiff originally claimed negligent infliction of emotional distress as well.  See Compl. (doc. no. 1-1) ¶¶ 77-82.  Perhaps in light of several decisions dismissing such claims as foreclosed in the absence of a viable negligence claim, plaintiff's counsel struck it, alongside the plaintiff's negligence claim, from the First Amended Complaint.  See Mader, 2017 DNH 11, 12-13; Gasparik, 2016 DNH 215, 11; Riggieri, 2016 DNH 128, 26-27; Bowser, 2015 DNH 149, 9-10; LaCourse, 2015 DNH 77, 33-34.

atrocious, and utterly intolerable in a civilized community." Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009).

As courts in this District have repeatedly observed, "[t]he ordinary activities of a bank foreclosing on a mortgage do not generally meet the 'extreme and outrageous' standard." Bradley v. Wells Fargo Bank, N.A., 2014 DNH 41, 12 (Barbadoro, J.); see also Mottram v. Wells Fargo Bank, N.A., 2016 DNH 46, 12-13 (Barbadoro, J.) (repeated foreclosure notices sent to disabled borrower amount to "the kinds of ordinary foreclosure-related activities that, in most cases, cannot give rise to a viable intentional infliction of emotional distress claim."); Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 136 (D.N.H. 2012) (Laplante, J.) (potentially unlawful mortgage modification and foreclosure misconduct do not support claim for intentional infliction of emotional distress).

The complaint does not support such a claim. The plaintiff alleges that the defendant contacted her two days after her husband's death and informed her "that she was being removed from the home preservation program and that the home would be placed back in to [sic] foreclosure."[19] She does not allege that, at the time of that communication, the defendant knew that

---

[19] First Amended Compl. (doc. no. 12) ¶¶ 18-19.

16

her husband had died a mere two days prior.  In fact, she
appears to allege that she informed defendant of this fact
during that same telephone call, in the process of seeking
"additional time to find employment before she was removed from
the home preservation program."[20]  Even taking these allegations
in the light most favorable to the plaintiff, the complaint
fails to state a claim for intentional infliction of emotional
distress in the absence of any allegation that the defendant
knew of the plaintiff's husband's death or that the plaintiff
was, in fact, removed from the program and her home placed into
foreclosure proceedings.

   This leaves only the allegation that the defendant told the
plaintiff that her home would be placed into foreclosure.  As to
that, the court cannot say that the actions of a party to a
contract exercising its rights under that contract, "go beyond
all possible bounds of decency" or are "atrocious, and utterly
intolerable in a civilized community."  Mikell, 158 N.H. at 729.
The court recognizes that the threat of home foreclosure,
especially under these circumstances, "is a terrible event and
likely to be fraught with unique emotions and angst," but as in
Moore, "the defendants' actions cannot, as a matter of law, be

---

[20] Id. ¶ 20.

17

called 'utterly intolerable in a civilized community.'" Moore, 848 F. Supp. 2d at 136. The plaintiff's intentional infliction of emotional distress claim is, therefore, dismissed.

**E. RESPA (Count 5)**

Finally, the court turns to the plaintiff's RESPA claim. RESPA prohibits "[a] servicer of a federally related mortgage" from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure . . . ." 12 U.S.C. § 2605(k)(1)(C). Plaintiff alleges that Wells Fargo violated this subsection because, while she "has done everything within her power to avoid foreclosure" in that she has "requested and re-requested a forebearance to avoid foreclosure," those "requests have been unreasonably denied."[21]

As Magistrate Judge Johnstone has observed in the face of almost identical allegations, § 2605(k)(1)(C) "does not make it unlawful to fail to respond to any requests to avoid foreclosure, but, as relevant here, to 'requests to correct errors relating to[,]' among other things, 'avoiding foreclosure.'" Gasparik, 2016 DNH 215, at 18; see also Mader,

---

[21] First Amended Compl. (doc. no. 12) ¶¶ 78-80.

2017 DNH 11, at 13. That is, while a servicer is obligated by

§ 2605(k)(1)(C) to respond to requests to correct errors

relating to avoiding foreclosure, § 2605(k)(1)(C) does not

impose an obligation on servicers to respond favorably to all

requests to avoid foreclosure, as plaintiff would have it do.

As in both Gasparik and Mader, the plaintiff here "has nowhere

asserted that she made a request to correct an error relating to

avoiding foreclosure, let alone that [the defendant] failed to

respond to such a request."  Gasparik, 2016 DNH 215, at 18;

Mader, 2017 DNH 11, at 13.  Acknowledging this, the plaintiff

withdrew this claim at oral argument.  The court, accordingly,

dismisses the plaintiff's RESPA claim.

## IV. Conclusion

The plaintiff's complaint fails to state any claim for

relief.[22]  The defendant's motion to dismiss the complaint[23] is

---

[22] The plaintiff also included a litany of "equitable considerations" which, in her original complaint, she counted as one of her claims. First Amended Compl. (doc. no. 12) ¶¶ 28-34; Compl. (doc. no. 1-1) ¶¶ 29-36. Though, as discussed above, the court is not unsympathetic to the hardships that the plaintiff has suffered, and understands the difficulties caused by her husband's illness and passing, these allegations do not amount to a claim for relief. To the extent plaintiff intended to assert them as such, that count is dismissed. See McNutt, 2017 DNH 67, 6 (declining to construe "equitable considerations" count as a specific claim in equity and dismissing it).

[23] Document no. 13.

therefore GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_/s/ Joe Laplante_
Joseph N. Laplante
United States District Judge

Dated:   April 28, 2017

cc:  Keith A. Mathews, Esq.
     Joseph Patrick Kennedy, Esq.